**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ELISA NILI CIRILO PERES BEN-RAFAEL,
Individually and as Next of Kin of Yonatan Mishael
Ben-Rafael and Noa Ben-Rafael, minors, and as
Executor of the Estate of David Ben-Rafael
c/o ROLAND ROTH
33 Jaffa Street
Jerusalem Israel

RALPH I. GOLDMAN, Individually and as Executor
of the Estate of Helen Goldman
c/o ROLAND ROTH
33 Jaffa Street
Jerusalem Israel

JUDITH GOLDMAN BAUMGOLD
c/o ROLAND ROTH
33 Jaffa Street
Jerusalem Israel
      and
NAOMI GOLDMAN
215 East 68th Street, #6R
New York, New York

       Plaintiffs
       v.

ISLAMIC REPUBLIC OF IRAN
c/o Ministry of Foreign Affairs of the Islamic
Republic of Iran
Ebn e Sina Street
Emam Khomeini Square
Tehran, Iran
      and
MINISTRY OF INFORMATION
AND SECURITY OF IRAN
Pasdaran Avenue
Golestan Yekom
Tehran, Iran

      Defendants.

Civil Action No. _____

1

## COMPLAINT

Plaintiffs Elisa Nili Cirilo-Peres Ben-Rafael, individually, as parent and next of kin of minors Yonatan Mishael Ben-Rafael and Noa Ruth Ben-Rafael, and as Executor of the Estate of David Ben-Rafael, Ralph I. Goldman, individually and as the prospective Executor of the Estate of Helen Goldman, Judith Goldman Baumgold and Naomi Goldman, hereby sue the Islamic Republic of Iran and the Ministry of Information and Security of Iran, ("collectively Defendants"). In support of their causes of action, Plaintiffs allege as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1330(a), 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The Defendants are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605(a)(7), and related statutes. This action arises under the laws of the United States of America, customary international law, the common and statutory laws of New York, the District of Columbia and the State of Israel.

2.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(f)(4).

3.      This is an action brought by the duly appointed Executor of the Estate of David Ben-Rafael and the immediate family members of the late David Ben-Rafael stemming from the May 19, 1992 bombing of the Embassy of the State of Israel in Buenos Aires, Argentina during which the Decedent, a duly accredited Israeli diplomat serving in Argentina, was killed in a terrorist attack by Hezbollah terrorists trained, sponsored, supported and materially assisted by Defendants Islamic Republic of Iran ("Iran") and the Ministry of Information and Security of Iran ("MOIS").

2

**THE PARTIES**

4.      David Ben-Rafael ("Decedent") was a citizen and domiciliary of the State of Israel on May 19, 1992, when he was killed in a massive explosion that destroyed the building housing Israel's Embassy in Buenos Aires, Argentina ("Embassy Bombing").  At the time, the Decedent served in the embassy building as an official Israeli Foreign Service diplomat duly accredited to Argentina.  The Decedent was born a citizen of the United States in the State of New Jersey on September 30, 1948.  He retained United States citizenship continuously until sometime in late 1984 or early 1985 when he voluntarily surrendered it because his employer Israel's Foreign Ministry had posted him to serve in the United States.  No foreign diplomatic posted to the United States may hold United States citizenship.

5.      The Plaintiff Elisa Nili Cirilo-Peres Ben-Rafael ("Elisa") was born a citizen of the United States and has been continuously and uninterruptedly a citizen of the United States.  Elisa was the lawful wife of the Decedent.  She is a Plaintiff in this action (i) in her individual capacity as the wife of the Decedent, (ii) in her capacity as Executor of the Decedent's estate under the laws of the State of Israel, and (iii) as the natural mother and next of kin of the minor children of the Decedent-Yonatan Mishael Ben-Rafael and Noa Ruth Ben-Rafael.  At all times relevant to this action, Elisa has been domiciled in Israel.

6.      The minor Yonatan Mishael Ben-Rafael ("Yonatan") was born a citizen of the United States on June 16, 1991.  He is the natural child of the Decedent and of Elisa.  He has been continuously from birth a citizen of the United States.  At all times relevant to this action Yonatan has been domiciled in Israel.

7.      The minor Noa Ruth Ben Rafael ("Noa") was born a citizen of the United States on November 20, 1988.  She is the natural child of the Decedent and of Elisa.  She has been

continuously from birth a citizen of the United States.  At all times relevant to this action, Noa

has been domiciled in Israel.

8.    Plaintiff Ralph I. Goldman is the natural father of the Decedent.  He is a

naturalized citizen of the United States as well as a citizen of the State of Israel.  At all times

relevant to this action, Plaintiff Ralph I. Goldman ("R. Goldman") was a domiciliary of the State

of New York.

9.    In addition to bringing this action individually, Plaintiff R. Goldman brings this

action in his capacity as the soon to be duly appointed Executor of the Israeli estate of Helen

Goldman.  Helen Goldman was the biological mother of the Decedent.  At all times relevant to

this action, Helen Goldman was a citizen of the United States and of Israel and a domiciliary of

the State of New York.

10.    The Plaintiff Judith Goldman Baumgold ("Baumgold") was born a citizen of the

United States on October 15, 1944.  She has maintained continuous and uninterrupted United

States citizenship from birth.  At all times relevant to this action, Baumgold has been a

domiciliary of Israel.  Baumgold is the natural child of the Plaintiff R. Goldman and of the late

Helen Goldman and is the sister of the Decedent.

11.    The Plaintiff Naomi L. Goldman ("Naomi") was born a citizen of the United

States on April 1, 1955.  She has maintained continuous and uninterrupted United States

citizenship and is a domiciliary of the State of New York.  Naomi is the natural child of Plaintiff

R. Goldman and of the late Helen Goldman and is the sister of the Decedent.

12.    Defendant Islamic Republic of Iran ("Iran") is a foreign state which has been

designated since January 19, 1984, as a state sponsor of terrorism pursuant to Section 6(j) of the

Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), and Section 620A of the Foreign

Assistance Act of 1961, 22 U.S.C. § 2371. Iran routinely provides material support and resources to Hezbollah, a politico-paramilitary terrorist organization operating in the Middle East and in other parts of the world, including but not limited to Argentina. At all times relevant, Iran sponsored Hezbollah, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, by providing it with funding, direction, training and other assistance for its terrorist activities against Israel and its citizens committed in Israel, and as well as in other parts of the Middle East and in countries outside of the Middle East, including Argentina. These terrorist activities have been undertaken to promote Islamic fundamentalism and to further the support of Iran's state sponsored terrorism agenda.

13.    Defendant Ministry of Information and Security of Iran ("MOIS") operates, *inter alia*, as an intelligence service and a conduit for terrorism, and functions both within and beyond Iran's territory. MOIS is an "agency or instrumentality" of Iran. At all times relevant to this action, Hezbollah acted as agent of Defendant Iran and MOIS respectively. At all times relevant to this action, MOIS acted as an agent of the Islamic Republic of Iran and performed certain acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605(a)(7). Specifically, MOIS acted as a conduit for the Islamic Republic of Iran's provision of funds, training, direction and material assistance to Hezbollah for its terrorist activities in Lebanon, Argentina, Israel and elsewhere, including the actions relating to the Embassy Bombing.

## BACKGROUND FACTS

14.    On March 17, 1992, a powerful and devastating explosion destroyed the building housing the Embassy of the State of Israel in Buenos Aires, Argentina ("Embassy Building").

15.    The Embassy Bombing was carried out by a suicide bomber who drove a pickup truck loaded with powerful explosives which smashed into the front of the Embassy Building and detonated.  The resulting explosion destroyed the Embassy Building, a Catholic church and a nearby school building.  The Embassy Bombing killed twenty-nine (29) persons and wounded 242.  Most of the victims were citizens of Argentina.  Many of the victims were children. Decedent was among the twenty-nine (29) persons killed in the Embassy Bombing.

16.    The explosive utilized in the Embassy Bombing contained 65 kilograms of material known as C-4 or Sentex.

17.    The perpetrators of the Embassy Bombing gained access to Argentina through the so-called "TriBorder" Area, which is, the area where Argentina, Brazil and Paraguay meet.

18.    Following the Embassy Bombing, a group called "Islamic Jihad" (the parent organization of Hezbollah) claimed responsibility.  The stated motive for the Embassy Bombing was retaliation for the February 16, 1992, fatal attack by Israeli military forces on Hezbollah leader Sheikh Abbas-al-Musawi in Southern Lebanon on February 19, 1992.

19.    In May 1998, Moshen Rabbani ("Rabbani"), who had served as the Cultural Attache of Iran in Argentina at the time of the Embassy Bombing and through December 1997, was detained in Germany at the request of Argentina on charges of complicity in the Embassy Bombing.

20.    In 1999, the Argentine authorities, based on "conclusive evidence" that Hezbollah was behind the Embassy Bombing, issued an arrest warrant for internationally prominent terrorist and Hezbollah leader Imad Mughniyah.

21.    Hezbollah is an armed branch of the terrorist group known internationally as Islamic Jihad.  Hezbollah organized, planned and carried out the Embassy Bombing with material assistance from the Defendants Iran and MOIS.  In doing so, Hezbollah acted as agent of the Defendants Iran and MOIS.

22.    The aforesaid willful, wrongful, intentional, outrageous, malicious and reckless acts of Hezbollah members, which were funded, directed and otherwise materially supported and assisted by Iran, through its agent Defendants MOIS, constitute acts for which officials and agents of the United States Government would be liable if such acts were carried out within the United States.

## COUNT XXIII
### (N.Y. Statutory Cause Of Action-Wrongful Death)

24.    The facts alleged in Paragraph 1 through 22 are incorporated by reference as if fully alleged herein.

25.    The acts of the Defendants alleged herein proximately caused the wrongful death of the Decedent.

26.    The Defendants would have been liable to the Decedent, had he lived but for the injuries and damages they inflicted upon him.

27.    As the  duly appointed Executor of the estate of the Decedent, Elisa has, by virtue of N.Y. Est. Powers & Trusts Law 5-4.1(1), the right of action to recover wrongful death damages for or on behalf of the Decedent's  statutory distributees.

28.     As a direct and proximate result of the wrongful death of the Decedent, his distributees have suffered damages including, but not limited to, loss of the Decedent's earnings and the loss of services which his distributees might have received from the Decedent.

### COUNT XXIX
### (State of New York – Statutory Survival Action)

30.     The facts alleged in Paragraph 1 through 27 are incorporated herein by reference.

31.     The acts of the Defendants alleged herein have proximately caused the Decedent conscious pain and suffering from the moment of the explosion until his gruesome death.  Such conscious pain, suffering and anguish before his death were sustained and extreme in nature.

32.     Pursuant to N.Y. Est. Powers& Trusts Law § 11-3.2, the cause of action which the Decedent had but for his death, for said conscious pain, suffering and mental anguish while alive, is vested in Plaintiff Elisa, as the appointed Executor of his estate.

### COUNT XXXIII
### (Common Law of New York –
### Intentional Infliction of Emotional Distress)

34.     The allegations contained in Paragraphs 1-30 are incorporated herein by reference.

35.     The Defendants' acts through their agents, of planning, orchestrating and carrying out the massive Embassy Bombing in which the Decedent was killed (i) constitute extreme and outrageous conduct, (ii) were undertaken with an intent to cause the individual Plaintiffs, including the late Helen Goldman**,** as the Decedent's immediate family members, severe emotional distress, (iii) were directed at the individual Plaintiffs as his immediate family members, and (iv) proximately resulted in the actual infliction of severe emotional distress on each and every one of the individual Plaintiffs.  Under the common law of the State of New

York said acts constitute intentional infliction of emotional distress on Plaintiffs in their individual capacities as members of the immediate family of the Decedent.

36.     As a proximate result of the intentional infliction of emotional distress upon the late Helen Goldman, she suffered a heart attack two months after the Embassy Bombing.

## COUNT IV
## District of Columbia – Statutory Cause of Action
## Wrongful Death

37.     The facts alleged in Paragraph 1 through 33 are incorporated by reference as if fully alleged herein.

38.     The acts of the Defendants alleged herein proximately caused the wrongful death of the Decedent.

39.     The Defendants would have been liable to the Decedent, had he lived, for the injuries and damages they inflicted upon him.

40.     As the duly appointed Executor of the estate of the Decedent, Elisa has, by virtue of D.C Code Ann. § 16-2701 (2001) the right of action to recover wrongful death damages for or on behalf of the Decedent's statutory distributees.

41.     As a direct and proximate result of the wrongful death of the Decedent, his distributees have suffered damages including, but not limited to, loss of the Decedent's earnings and the loss of services which his distributees might have received from the Decedent.

## COUNT V
## (District of Columbia – Statutory Survival Action)

42.     The facts alleged in Paragraph 1 through 38 are incorporated herein by reference.

43.     The acts of the Defendants alleged herein have proximately caused the Decedent conscious pain and suffering from the moment of the explosion until his gruesome death.  Such conscious pain, suffering and anguish before his death were sustained and extreme in nature.

44.    Pursuant to D.C. Code Ann. § 12-101 (2001), the cause of action which the

Decedent had but for his death, for said conscious pain, suffering and mental anguish while

alive, is vested in Plaintiff Elisa, as the appointed Executor of his estate.  Such causes of action

include, but are not limited to:

        a.)    The Defendants' acts, through its agents, of planning,
orchestrating and carrying out the massive Embassy
Bombing in which the Decedent was killed constitute an
intentional, unpermitted, harmful or offensive contact
with the Decedent or something attached to the Decedent.
Under the common law of the District of Columbia, said
acts constitute battery on the Decedent.

        b.)    The Defendants' acts, through its agents, of planning,
orchestrating and carrying out the massive Embassy
Bombing in which the Decedent was killed constitute an
intentional and unlawful attempt or threat, either by
words or acts, to do physical harm to the Decedent. Under
the common law of the District of Columbia, said acts
constitute assault on the Decedent.

**COUNT VI**
**Common Law of District of Columbia –**
**Intentional Infliction of Emotional Distress**

45.    The allegations contained in paragraphs 1 through 41 are incorporated herein by

reference.

46.    The Defendants acts,  through its agents, of planning, orchestrating and carrying

out the massive Embassy Bombing in which the Decedent was killed (i) constitute extreme and

outrageous conduct  on the part of the Defendants which (ii) intentionally or recklessly (iii)

caused each and every individual Plaintiff, including the late Helen Goldman severe emotional

distress.  Under the common law of the District of Columbia, said acts constitute the intentional

infliction of emotional distress on Plaintiffs in their individual capacities as members of the immediate family of Decedent.

47.     As a direct and proximate cause of such acts, the Plaintiffs have suffered and continue to suffer, severe emotional distress.

### COUNT VII
### District of Columbia Common Law
### Loss of Consortium

48.     The allegations contained in paragraphs 1-44 are incorporated herein by reference.

49.     The acts of the Defendants alleged herein proximately caused the wrongful death of the Decedent.

50.     In proximately causing the wrongful death of the Decedent, the Defendants have deprived the Plaintiff Elisa not only of material services of her spouse, but also of the affection, companionship, sexual relations and the customary amenities of married life.

51.     Under the common law of the District of Columbia, the Defendants actions directly and proximately resulted in the Plaintiff Elisa's loss of consortium for which she is entitled to damages from the Defendants.

### COUNT VIII

### (Willfully Caused Damage – Article 64.1 Of The Torts Ordinance of Israel)

52.     The allegations contained in Paragraphs 1-48 are incorporated herein by reference.

53.     Article 64 of the Israeli Civil Wrongs Ordinance (New Version –
1968)("Ordinance") provides a recovery for the Plaintiffs for an offense proscribed by the
Ordinance, specifically the act(s) of willfully causing damage to a person.

54.     The acts of the Defendants and of their agent Hezbollah which proximately
caused the Decedent to be killed in the most gruesome manner and further proximately caused
additional injuries to the Plaintiffs constitute willfully causing damage within the meaning of
Article 64 of the Ordinance.

### COUNT IX
**(Israeli Statutory Cause Of Action-Breach Of Statutory Duty)**

55.     The allegations contained in Paragraphs 1-51 are incorporated herein by
reference.

56.     Section 63 of the Ordinance gives rise to a cause of action for committing the
civil wrong of Breach of Statutory Obligation.

57.     The aforesaid acts of the Defendants and of their agent Hezbollah constitute
violations of various statutorily imposed obligations, including but not limited to the following:

a.)     the offense of aggravated assault, within the meaning of Section 382 of Israel's
        Penal Code.

b.)     the offense of assault against a helpless person, within meaning of Section 368 C
        of Israel's Penal Code.

c.)     the offense of causing aggravated intentional harm, within the meaning of
        Section 329 of Israel's Penal Code.

d.)     the offense of murder, within the meaning of Section 306 of Israel's Penal Code.

e.)     the offense of aiding a terrorist organization, within the meaning of § 99 of
        Israel's Penal Code.

f.)     the offense of providing support to terrorist organization in violation of § 2 of
        Israel's Terrorism Prevention Ordinance (1948).

## COUNT X
### (Israeli Tort Of Assault-Article 23 Of The Ordinance)

58.    The Plaintiffs incorporate herein by reference all material allegations contained in Paragraphs 1-54 hereof.

59.    Article 23 of the Ordinance gives rise to a cause of action under Israeli law for assault.

60.    The acts of the Defendants and of their agent Hezbollah in causing the killing by lethal explosion of the Decedent while he was working in the Embassy Building and lacking any ability to defend himself against such acts constitute aggravated assault under Article 23 of the Ordinance.

## COUNT XI
### (Violation Of Israel's Basic Law: Human Dignity And Freedom)

61.    The Plaintiffs incorporate herein by reference all material allegations contained in Paragraphs 1-57 hereof.

62.    Israel's statutory Basic Law: Human Dignity And Freedom imposes a duty on the Defendants to safeguard the dignity, freedom and physical safety/integrity of the Decedent.

63.    The Defendants through their actions and the acts of their agent Hezbollah violated the said statutory duty which proximately caused injury and damages to the Decedent and to Plaintiffs in their respective individual capacities as his immediate family members.

## COUNT XII
### (Violation Of Israel's International Treaty Obligations)

64.    The Plaintiffs incorporate herein all material allegations contained in Paragraphs 1-63 hereof.

65.    A number of international treaties and/or international obligations/duties imposed thereunder have become, by virtue of the State of Israel's execution and ratification thereof, part of the binding domestic law of Israel.  These include duties and obligations under the following:

a.)    The Treaty Against Torture And Cruel, Inhuman Or Humiliating Punishments, which was signed by Israel on October 22, 1966 and was ratified on April 8, 1991.

b.)    Article 7 of the International Treaty Concerning The Rights Of Citizens And States, which was signed by Israel on December 19, 1966 and was ratified on August 19, 1991.

c.)    Article E of the Universal Declaration of Human Rights of 1948.

66.    The violations of these treaties and obligations which are part of Israel's binding domestic law are actionable, as a matter of Israeli law.

67.    The Defendants' acts constitute grave violations of the prohibitions and duties imposed by the aforesaid treaties and agreements.

## COUNT XIII
### (Violation Of Customary International Law)

68.    The Plaintiffs incorporate herein all material allegations contained in Paragraphs 1-64 hereof.

69.    The acts of murder by lethal explosion, violation of the diplomatic sanctity of another nation's embassy by lethal assault upon its diplomatic personnel, including Decedent, constitute violations of the peremptory or jus cogens norms of customary international law.

## REQUESTS FOR RELIEF

The Plaintiffs request this Court to grant the following relief:

1.    As to Counts I, II, IV, V as well as Counts VIII-XIII, Plaintiff Elisa Nili Cirilo-Peres Ben-Rafael in her capacity as Executor of the Estate of David Ben-Rafael demands

judgment for (i) compensatory damages against the Defendants Iran and MOIS jointly and severally in the amount of Thirty-Five Million Dollars ($35,000,000.00), plus prejudgment interest, (ii) punitive damages against the Defendant MOIS in the sum of Three Hundred Million Dollars ($300,000,000.00) and (iii) the costs of this action.

2.    As to Count VII, Elisa Nili Cirilo Peres Ben-Rafael in her individual capacity as the spouse of the Decedent demands judgment for (i) compensatory damages against Defendants Iran and MOIS jointly and severally in the sum of $5,000,000 (ii) prejudgment interest plus the costs of this action.


3.    As to Counts III, VI as well as Counts VIII-XIII Plaintiffs in their respective individual capacities and R. Goldman in his representative capacity on behalf of the Estate of Helen Goldman demand judgment for compensatory damages in the total sum of Seventy Million Dollars ($70,000,000.00) against Defendants Iran and MOIS jointly and severally, plus prejudgment interest, (ii) punitive damages against the Defendant MOIS in the sum of Three Hundred Million Dollars ($300,000,000.00) and (iii) the costs of this action.

5.    To grant such other and further relief as this Court deems necessary and appropriate.

Dated:  April ___, 2006

_____
Emil Hirsch (DC Bar No. 930479)
Paul L. Knight (DC Bar No. 911594)
O'Connor & Hannan, LLP
1666 K Street, N.W., Suite 500
Washington, D.C.  20006-2803
Telephone:  (202) 887-1400
Facsimile:  (202) 466-3215
Attorneys for Plaintiffs

_____
Philip S. Friedman (D.C. Bar No. 421854)
Friedman Law Offices, PLLC
2401 Pennsylvania Avenue, N.W.
Suite 410
Washington, DC 20037
Telephone:  (202) 293-4175
Facsimile:  (202) 318-0395
Attorney for Plaintiffs